
RECEIVED
IN MONROE, LA
JAN 0 6 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| ROBERT FENCEROY AND MAE FENCEROY | CIVIL ACTION NO. 05-0480 |
| VERSUS | JUDGE ROBERT G. JAMES |
| MOREHOUSE PARISH SCHOOL BOARD | MAG. JUDGE JAMES D. KIRK |

## RULING

This is a civil rights action by Robert and Mae Fenceroy, on behalf of their minor son, against Defendant Morehouse Parish School Board ("the School Board"). Plaintiffs seek an injunction preventing the School Board from enforcing a portion of its student dress code policy that prohibits male students from wearing their hair in braids.

Pending before the Court is a Motion for Summary Judgment [Doc. No. 16] filed by the School Board. Plaintiffs have filed an Amended Memorandum in Opposition to the Motion for Summary Judgment ("opposition memorandum") [Doc. No. 26].[1]

For the following reasons, the School Board's Motion for Summary Judgment is GRANTED.

## I. Facts and Procedural History

Plaintiffs reside in Morehouse Parish, Louisiana. They are the parents of Oscar James

---

[1] Plaintiffs filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment [Doc. No. 21] on November 4, 2005. However, Plaintiffs failed to include their statement of material facts and the result of a survey prepared by the School Board. On November 14, 2005, the Court granted Plaintiffs leave to file their Amended Memorandum in Opposition to Motion for Summary Judgment, which includes the survey. Plaintiffs also filed a statement of material facts separately. *See* [Doc. No. 24]. Any references to Plaintiffs' opposition memorandum will be to the amended memorandum.

Fenceroy ("Oscar"), a student in the Morehouse Parish school system, who is currently in the ninth grade at Bastrop High School.

While attending elementary school in Morehouse Parish, Oscar wore his hair in braids. There is no evidence presented to the Court that any person ever complained that Oscar's braids were detrimental or distracting. Prior to the 2004-2005 school year, there was no published policy on hairstyles in the parent handbook.

Sometime during the summer of 2004, Richard Hartley ("Hartley"), Superintendent of the School Board, conducted a survey of teachers and staff on whether male students should be permitted to wear braids. No other hairstyles were included in the survey. Although there is a dispute between the parties as to the number of responses opposed to or in support of allowing male students to wear braids, the survey results were extremely close. In a number of the responses, teachers and staff noted concerns about "afros" or "naturals," but there was nothing to indicate that the wearing of braids (or any other hairstyle) is a detriment to student performance.

During the 2004-2005 school year, Hartley appointed a committee composed of educators and community members to develop a safety policy. The committee developed a safety policy and, in conjunction with the safety policy, revised the dress code policy. The School Board, which is composed of three female members and four male members,[2] adopted both the safety policy and the revised dress code policy.

Under the revised dress code policy, adopted on August 4, 2004, all students are required to wear uniforms. With regard to hair styles, the dress code policy provides as follows:

---

[2]Three of the School Board members are African-American, and four of the members are white.

2

> Boys and girls must wear their hair in a standard, acceptable style. Hair in rollers or curlers, excessive teasing, beehives, hair in the face or any other style that is detrimental to the student's performance of the normal school activities is prohibited. **Male students shall not wear braids in their hair** nor shall any student wear spiked hair or any other hair style which is distracting to other students in the performance of school learning activities. Naturals will be acceptable if neat.

(emphasis added). Female students are not prohibited from wearing braids.

## II. Law and Analysis

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports

his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

B.     **Equal Protection**

Plaintiffs contend that Oscar has been denied Equal Protection under the United States Constitution and the Louisiana Constitution[3] because the dress code policy prohibits males, but not females, from wearing their hair in braids. Plaintiffs also contend that the dress code policy does not further an important or substantial school interest and that it is arbitrary, overbroad, and not all inclusive.

The School Board re-asserts the argument previously made in its Motion to Dismiss that, under the Fifth Circuit's decision in *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972), Plaintiffs have no Equal Protection claim. Even if such claim were cognizable, the School Board contends that "the prohibition on unusual hairstyles serves several important objectives, including the need for discipline, the need to avoid disruptions and distractions in classrooms, the need to foster respect for authority, and the need to encourage conformation to community standards." [Doc. 16, at 4].

In support of its argument, the School Board has submitted the affidavits of Hartley and Bastrop High School Principal Tom Thrower ("Thrower"). Hartley and Thrower attest that it is

---

[3]Although Plaintiffs have stated that they are seeking protection under both the United States and Louisiana Constitutions, all arguments by Plaintiffs and the School Board are addressed to their federal claims. Therefore, the Court can only assume that no distinctions are made between the two claims in this case.

4

uncommon for males of any age to wear braids in the Bastrop community. They further attest that males wearing braids are likely to cause a classroom disruption and that a school dress code, including uniform hair regulations, promotes school unity, respect for authority, a positive learning environment and school safety by prohibiting gangs from displaying signs or colors in their hair or clothing.

In response, Plaintiffs have produced affidavits from a number of long-time members of the community who attest that it is common for African-American males to wear braids and that braids are not distracting or associated with gang activity. The affiants state that they are not aware of a student who has worn braids causing a "disruption for any principal or teacher" or having his school performance affected negatively.

In *Karr*, the Fifth Circuit held that there is no constitutional right "to wear one's hair in a public high school in the length and style that suits the wearer." 460 F.2d at 613. The Fifth Circuit specifically examined and rejected whether a cause of action exists under the First Amendment, the Equal Protection Clause, or was otherwise a "substantive constitutional right." *Id.* at 613-16.

As previously noted by this Court, the *Karr* Court applied a rational basis standard of review to grooming regulations and determined that it was "evident from the record that the school authorities [sought] only to accomplish legitimate objectives in promulgating the hair regulation in question." *Id.* at 616-17. The Fifth Circuit then announced a "per se rule that such [hair and grooming] regulations are constitutionally valid," subject to one qualification: that grooming policies cannot be wholly arbitrary. *Id.* at 617-18, 618 n.26.

However, as also previously noted by the Court, the Supreme Court has recognized that classifications based on "quasi-suspect" classes, including gender, are subjected to a heightened

5

standard of review. *See Craig v. Boren*, 429 U.S. 190, 197-199 (1976). Therefore, the Court concluded in ruling on the School Board's Motion to Dismiss that the issue is "whether there is an important and substantial reason girls are permitted to wear their hair in braids, but boys are not."

The School Board contends that the Court's previous ruling is incorrect, that *Karr* is still good law as to an Equal Protection claim, and that, pursuant to *Karr*, this case should be dismissed as a matter of law for failing to state a claim.

After careful review of case law cited by the School Board, the Court concludes that the Fifth Circuit's decision in *Karr* compels summary judgment in favor of the School Board. In the years following the *Karr* decision, the Fifth Circuit has consistently relied on that ruling in its review of school grooming and dress code policies.

For example, in *Davenport v. Randolph Cty. Bd. of Educ.*, 730 F.2d 1395 (5th Cir. 1984), the Fifth Circuit addressed an Equal Protection claim raised by a plaintiff opposing the school board's "clean shaven" policy. Although the plaintiffs in that case did not oppose the policy on gender-related grounds, the Fifth Circuit's analysis is instructive:

> ... [Plaintiffs] contends that because RCHS is the only school in the county with a "clean shaven" policy, they have been denied equal protection relative to other county student-athletics. The argument fails to realize, however, that *Karr* and *Stevenson* [*v. Board of Education of Wheeler County, Georgia*, 426 F.2d 1154 (5th Cir. 1970)] **stand for the proposition that grooming regulations at the high school level do not deprive the plaintiffs of any constitutionally recognized rights in the first place.** It would be anomalous, therefore, to hold that the plaintiffs have no constitutional right to not shave, but if other schools do not adopt such a policy the plaintiffs' refusal to shave is transformed into a constitutionally protected activity.

*Id.* at 1397 n. 3; *see also Domico v. Rapides Par. Sch. Bd.*, 675 F.2d 100, 102 (5th Cir. 1982)

( "[T]his Circuit has established a bright line applicable to hairstyle regulation cases," and "in the public elementary and secondary schools, such regulations are always justified by the school's needs.").

Applying a rational basis review, *Karr* requires only that the School Board's dress code policy not be wholly arbitrary. The Court finds that the dress code policy is not arbitrary. The School Board advanced legitimate concerns to support its dress code policy: the need for discipline, the need to avoid disruptions and distractions in classrooms, the need to foster respect for authority, and the need to encourage conformation to community standards. The School Board further supported these expressed concerns with the affidavits of the superintendent and principal, both of whom have extensive experience in education. Under such circumstances, the Court finds that the School Board's dress code policy is a valid exercise of its authority.[4]

### III. Conclusion

For the foregoing reasons, the School Board's Motion for Summary Judgment [Doc. No. 16] is GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this _____6_____ day of _____January_____, 2006.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[4] Having concluded that *Karr* requires the Court to apply a rational basis standard of review, the Court expresses no opinion as to whether the School Board's dress code policy would survive the heightened standard of review for quasi-suspect classifications or the highest standard of review for suspect classifications. Such issues are better addressed at the appellate level.